## Hibberd, Appellant, *v.* Hubbard (No. 1).

*Pleadings—Evidence—Parties—Allegata—Probata.*

Where a plaintiff declares against four persons on a joint liability, but at the trial fails to produce testimony to show a liability on the part of one of them, his case fails.

*Executors and administrators—Wrongful payments—Evidence.*

Where the administrator of a deceased partner, with the knowledge of all the other surviving partners, pays to one of them, on his withdrawal from the firm, moneys out of the funds in his hands as administrator in settlement of the withdrawing partner's share in the business, the with-

drawing partner, the other partners and the administrator are liable to the estate of the deceased partner for the repayment of the funds of the estate misapplied by the administrator.

Argued Jan. 3, 1905. Appeal, No. 14, Jan. T., 1904, by plaintiff, from order of C. P. No. 3, Phila. Co., Dec. T., 1901, No. 399, dismissing exceptions to report of referee in case of Dilworth P. Hibberd, Administrator d. b. n. c. t. a. of George K. Hubbard, deceased, v. George L. Hubbard, Elon H. Guyn, R. Alfred Zimmerman and George A. Cotton, Individually, and as surviving partners and successors to George K. Hubbard, George L. Hubbard, Elon H. Guyn, R. Alfred Zimmerman and George A. Cotton, copartners, trading as George K. Hubbard & Company. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Reversed.

Exceptions to report of referee.

From the record it appeared that George K. Hubbard, George L. Hubbard, Elon H. Guyn, R. Alfred Zimmerman and George A. Cotton, special partner, on December 1, 1892, formed a copartnership to carry on a wholesale grocery busi-·ness in Philadelphia to expire on November 31, 1895. This business was carried on under the agreement until February 27, 1895, upon which day George K. Hubbard died. The remaining partners and the administrator of the estate of George K. Hubbard, with the expressed consent of all the rest of kin of the decedent, carried on the business as theretofore until November 30, 1895.

George A. Cotton and the administrator then withdrew and George L. Hubbard, Elon H. Guyn, and R. Alfred Zimmerman then formed a new copartnership and took over the interest of the estate in the former business.

George A. Cotton called for his share of the assets; George L. Hubbard as administrator paid to Cotton $11,300, and the other members paid $13,700 to him; making the total $25,000.

In 1896, Hubbard, administrator of Hubbard, deceased, had an appraisement made by said George A. Cotton and George W. Souder, of the undivided interest of George K. Hubbard in the firm of George K. Hubbard & Company; the appraisers valued the said interest at $33,797.20, and the administrator charged himself in his account with the same; and the adju-

dication thereof by the orphans' court of Philadelphia county was confirmed absolutely during the year 1896.

In September, 1903, the orphans' court removed George L. Hubbard as administrator, and appointed D. P. Hibberd to be administrator de bonis non.

In 1901, George L. Hubbard, administrator, began an action against the defendants. No statement of claim was filed until after the substitution of the present plaintiff for Hubbard. The statement of claim contained two counts :

1. To recover the sum of $33,797.20, with interest, for the interest of decedent's estate in the former firm of George K. Hubbard & Company, which said interest had been taken over, used and appropriated by the said defendants in continuing the said business after the death of George K. Hubbard, with the understanding that they should account to and pay said estate the value of the interest so taken when ascertained by an appraisement.

2. To recover the sum of $11,300, with interest, paid by the administrator to Cotton in settlement for special contribution, upon the dissolution of the copartnership.

After the cause was at issue, it was referred, by agreement of the parties, to George Tucker Bispham, Esq. The referee found in favor of the defendants upon the first count; and for the plaintiff upon the second count. A supplemental report was made in which the finding for the plaintiff upon the second count was reduced by $3,556.94, to the sum of $11,207.90. Other facts appear by opinion of the Supreme Court.

McMichael, J., dismissed exceptions to the referee's report.

*Errors assigned* were in dismissing the exceptions.

*J. Barton Rettew*, for appellant. Surviving partners are liable if they continue to trade with firm assets and fail to account to representatives of a deceased partner: Brown's Appeal, 89 Pa. 139.

An administrator can give no legal authority to surviving partners to trade with his decedent's assets: Grim's Appeal, 105 Pa. 375.

*John G. Johnson,* with him *Samuel P. Tull* and *Richard C. Dale,* for appellee.

OPINION BY MR. JUSTICE ELKIN, April 10, 1905 :

Two questions are raised by this appeal. The plaintiff in one count of his statement of claim seeks to recover the sum of $33,797.02, with interest, less a credit of $8,728. 65, paid on account, against four defendants jointly. At the trial he failed to produce testimony to show a liability on the part of one of the defendants. The learned referee so found as a fact and as a conclusion of law. The appellant declared on, but failed to prove a joint liability. The probata did not sustain the allegata. This is the end of one branch of the case. All assignments of error relating thereto are overruled.

The second count of the declaration raises a different question. It is herein sought to recover $11,300, with interest, from George L. Hubbard, Elon H. Guyn, R. Alfred Zimmerman and George A. Cotton, as individuals. This action is predicated on the allegation that George L. Hubbard, as administrator of George K. Hubbard, deceased, had wrongfully paid to the said George A. Cotton, at the instance and with the consent of the other defendants, the amount claimed out of funds in his hands as administrator. The estate of George K. Hubbard, deceased, was not indebted to Cotton. The surviving partners of the firm of George K. Hubbard & Company may have been so indebted. It is contended that the administrator of the decedent had no right to appropriate the trust funds to the payment of firm debts. The learned referee has so found in the following language : " The payments made by the administrator to the defendant, Cotton, in December, 1895, and April, 1896, were wrongful, and constituted a diversion of trust funds. When these payments were received by the defendant, Cotton, he knew that they were paid out of trust funds and he thereby made himself individually responsible for the return of these amounts to the personal representatives of George K. Hubbard." The learned referee further discusses the question in his opinion, wherein it is said : " It is plain that the payments of December 26, 1895 and April 22, 1896, were made in breach of trust. They were made by checks drawn on the administrator's account. They were not made in discharge of any obligation

for which the estate was answerable. They were misappropriations of trust funds. The defendant, Cotton, to whom these payments were made, was informed by the very transactions themselves that the administrator had no right to make them. There is no doubt, therefore, that both George L. Hubbard and the defendant, Cotton, would be answerable for these amounts."

If the case had ended here it would have been properly decided. Exceptions were filed to the original report of the referee and argued before him. He then filed a supplemental report in which he modified his original findings, and by so doing has raised the only meritorious question for the consideration of this court. The modification made in the supplemental report can best be stated in the language of the referee : " There is one qualification to be made. At the time that the December payment was made the fund on which the check was drawn was composed in part of George L. Hubbard's interest in the money paid by the Order of Sparta, which interest was one third of $2,500, or $833.33, and when the payment in April, 1896, was made the fund on which the check was drawn was composed in part of George L. Hubbard's interest in the money paid by the Massachusetts company, $2,723.61. So far as these two sums, therefore, are concerned, to wit: $833.33 and $2,723,61, George L. Hubbard had a right to do as he pleased with them. Any finding, therefore, against the defendants based upon this transaction must be subject to the deduction of the total of these two sums, namely $3,556.94."

We do not agree with the referee in this respect. All of the testimony had been taken, the facts found, and conclusions of law stated, when the first report was made. There was no new or additional testimony before the referee when the reduction of the award was made in his supplemental report. We must, therefore, consider the facts as shown by the evidence at the time of the first report. In order to intelligently understand the matter in controversy it is necessary to briefly state some of the material facts.

At the time of the death of the decedent his estate consisted very largely of his interest in the firm of George K. Hubbard & Company, which said interest was appraised at $33,797.02, the total inventory filed being $47,062.03. He also had three

policies of life insurance in force at the time of his decease, one in the National Life of Vermont for $10,000, payable to his estate; one in the Bay State Beneficial Association of Massachusetts in the sum of $10,000, payable to his three children, and the remaining policy being in the Order of Sparta in the sum of $2,500, in which the children were named as beneficiaries. The exact date when the National Life of Vermont paid the amount of its policy to the administrator is not definitely fixed. The evidence shows that the Order of Sparta, on November 18, 1895, paid $2,500 to George K. Hubbard, who represented the beneficiaries.    It also appears that the Bay State Beneficial Association paid to George K. Hubbard, as representative of the beneficiaries, on April 9, 1896, $8,170.84, being the net proceeds of that policy.    On December 26, 1895, the administrator paid Cotton by his check on the trust fund $8,500.    It is clear at that time the administrator had sufficient trust funds in his bank account to make this payment.    Cotton himself testified that this payment was made out of trust funds and indicated from whence the trust funds had been derived.    In reference to this matter he states: " They paid me I think some time the latter part of December, 1895, $8,500, and that came from a policy that was payable to the estate, if I remember rightly." The only policy payable to the estate was the one in the National Life of Vermont, and there can be no doubt that this was the fund out of which he was paid said amount.    We must conclude, therefore, that the first payment to Cotton was made entirely out of trust funds.    The check itself was drawn on the administrator's account.    There is no evidence in the case sufficient to negative the necessary and logical conclusion based upon these facts.    It is clear, therefore, that the referee's finding in his original report that the first payment to Cotton was made out of trust funds is correct.

How about the second payment of $2,800 on April 22, 1896? The testimony shows that the administrator did have or should have had sufficient trust moneys in his bank account at that time to make this entire payment.    It is true that in addition to the trust funds he deposited in his account the moneys received from the Order of Sparta and the Bay State Beneficial Association.    Just what he did with these funds is uncertain. His testimony is unsatisfactory as well as contradictory.    At

one time he says these moneys were loaned to the new firm; at another they were paid to Cotton; and at still another they were used in reimbursing the estate. Such testimony is without value to the court in arriving at a proper decision of the case. It is in evidence, however, that in a proceeding to distribute the funds in the assigned estate to George K. Hubbard & Company, the two sisters presented claims for their interest in these moneys derived from the Order of Sparta and the Bay State Beneficial Association. In that proceeding George L. Hubbard, Elon H. Guyn and the two sisters testified that their interest in the funds derived from these beneficial societies had been loaned to the firm. Their claims were allowed and a dividend on account thereof was awarded. These facts were in evidence before the referee. We must therefore conclude that the interests of the two sisters in these funds were loaned to the new firm, and not to Cotton. It is not clear what was done with the one third interest of George L. Hubbard in these funds. His one third interest may have been loaned to the new firm or may have been used by himself. His testimony is so "tangled," as he himself testified, that it is without value in the determination of the question. In our view of the case what disposition he made of his interest in these funds is not material. At the time he made the second payment to Cotton he had sufficient trust funds in his hands to pay the same. He made the payment with his check as administrator on the trust funds. The presumption is that the payment was made out of trust funds, and we discover nothing in the evidence to rebut this presumption. To our minds the conclusion is irresistible that the second payment to Cotton was also made out of trust funds. The learned referee erred in reducing the amount of his award in the supplemental report, and the court below erred in affirming the same and entering judgment for the amount so awarded.

The judgment is reversed, and it is directed that judgment be entered for the plaintiff in the court of common pleas for the amount awarded in the original report of the referee.